IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

PATRICIA C. FLOURNOY,          *
                               *
    Plaintiff,                 *
                               *
        v.                     *   CV 114-161
                               *
CML-GA WB, LLC, RIALTO CAPITAL *
ADVISORS, LLC, REX PROPERTY &  *
LAND, LLC, and PAUL GREGORY    *
KING,                          *
                               *
    Defendants.                *

# O R D E R

On July 29, 2014, Plaintiff Patricia C. Flournoy filed the instant complaint alleging Defendants violated 42 U.S.C. § 1981 by refusing to rent property to her because of her race. Now before the Court is Defendant CML-GA WB, LLC ("CML") and Rialto Capital Advisors, LLC ("Rialto") (collectively, "the Rialto Defendants") motion for judgment on the pleadings (doc. 11). For the reasons set forth below, the Rialto Defendants' motion is **DENIED**.

## I.  Judgment on the Pleadings Standard

The legal standards applicable to Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same. Roma Outdoor

1

Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008) ("A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss.") A motion for judgment on the pleadings, like a motion to dismiss, does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Scheur v. Rhodes, 416 U.S. 232, 236 (1974). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." Twombly, 550 U.S. at 556-57 (citing Durma Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

When, however, on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. See Executive 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991).

## II. BACKGROUND

Ms. Flournoy, an African-American woman, owns and operates Karisma Hair Studio in Augusta, Georgia, and has been a hair care professional for more than two decades. (Compl., Doc. 1, ¶¶ 3, 8.) CML owns the "JB Whites" building located at 936 Broad Street, Augusta, Georgia, and Ms. Flournoy alleges that Rialto "is the managing member of CML-GA WB, and it owns, controls, and has decision making authority over CML-GA WB." (Id. ¶¶ 4-5.) Defendant Rex Property & Land, LLC ("Rex Property") was, at all relevant times, the leasing agent for the JB Whites building, and Defendant Paul Gregory King ("Mr. King") "was an agent and broker for Rex Property[,]" who Ms. Flournoy contends "acted as an agent of Rex Property, Rialto Capital, and CML-GA WB[.]" (Id. ¶¶ 6-7.)

Given the success of the Karisma Hair Studio, which boasts a racially diverse client base, Ms. Flournoy began searching for a studio that would allow her space to expand her salon. (Id. ¶¶ 9-10.) In that search, Ms. Flournoy met with Ms. Andrea

3

Carr, a real estate agent employed by Rex Property, on August 12, 2012. (Id. ¶ 11.) In that meeting, Ms. Carr presented two options to Ms. Flournoy – the Imperial Theater building and the JB Whites building. (Id.) Ms. Flournoy submitted a rental application, along with $50.00 for a background and credit check, for space in the JB Whites building. (Id. ¶ 12.) After Ms. Carr indicated that everything checked out with Ms. Flournoy's credit, Ms. Flournoy indicated that she would like to move in on December 31, 2012 and identified a particular space of interest within the building. (Id. ¶ 13.) Ms. Carr and Ms. Flournoy then proceeded with the plans: Ms. Carr provided Ms. Flournoy with a blueprint of the space and discussed where Ms. Flournoy would like plumbing and electrical outlets to be located. (Id. ¶ 14.)

After several weeks of Ms. Flournoy's prodding without any contact from Ms. Carr, Ms. Carr informed Ms. Flournoy "that she needed to submit a business plan in order to rent space within the JB Whites building." (Id. ¶ 15.) When Ms. Flournoy inquired as to why a plan was necessary, Ms. Carr simply responded that she was told to request the plan. (Id.) After that call, Ms. Flournoy met with Ms. Carr in person, at which time "Ms. Carr informed Ms. Flournoy that she would 'know something soon' with respect to the application." (Id. ¶ 16.) At an unspecified time thereafter, Mr. King called Ms. Flournoy

4

and said "he wanted a salon tenant who could service the residents of the building, who are predominately white[,]" and Ms. Flournoy responded that her salon services clients of all races. (Id. ¶ 17.) Shortly thereafter, Mr. King visited the Karisma Hair Studio. (Id. ¶ 18.) Ms. Flournoy was apparently not present at this time and Mr. King requested that Ms. Flournoy call him, which she did, but Mr. King did not return the call. (Id.)

All the while, Ms. Flournoy moved forward with her intent to rent the space in the JB Whites building. She hired a business consultant, Catherine Maness, to prepare a business plan. (Id. ¶ 19.) Ms. Maness prepared a business plan after meeting with Ms. Carr to discuss any required content. (Id.) Upon the plan's completion, Ms. Maness contacted Ms. Carr to schedule a time to review the plan, to which Ms. Carr responded that "Ms. Flournoy would likely not be able to rent space within the JB Whites building due to her credit score." (Id. ¶ 20.) Apparently taken aback by this statement, Ms. Flournoy contacted Ms. Carr "to inquire why her credit score was not an issue when Ms. Carr had previously indicated that her credit score was sufficient." (Id. ¶ 21.) Ms. Carr did not return the call. (Id.)

Around November 2012, Ms. Flournoy and Ms. Maness — after receiving no response from Ms. Carr — visited Rex Property's

office in Augusta, Georgia to deliver the business plan. (Id. ¶ 22.) The two met with Mr. King, "who seemed to be annoyed by their visit." (Id.) During the meeting, Mr. King (1) refused to review the business plan, (2) stated that Ms. Flournoy's credit score was insufficient to rent the space, and, (3) after Ms. Flournoy informed him that Ms. Carr previously approved the credit score, indicated that "he did not care what Ms. Flournoy's credit score was, and that she would not be allowed to rent space within the JB Whites building under any circumstances." (Id.)

Ms. Flournoy contends that "many white commercial tenants of the JB Whites building were allowed to rent space within the building with lower credit scores" and "many white commercial tenants of the JB Whites building were not subjected to the same level of scrutiny," such as submitting a business plan. (Id. ¶¶ 23-24.)

Ms. Flournoy filed her complaint asserting just one cause of action — violation of 42 U.S.C. § 1981. The Rialto Defendants then filed their answer on November 3, 2014. (Doc. 10.) On the same day, the Rialto Defendants filed the instant motion for judgment on the pleadings (doc. 11) which, having been fully briefed, is ripe for the Court's review.

## III. DISCUSSION

The Rialto Defendants contend that Ms. Flournoy has failed to allege sufficient facts to establish that (1) they engaged in intentional discrimination[1] and (2) the relationship between the Rialto Defendants and Rex Property and Mr. King was that of an independent contractor. With a principal/agent relationship lacking, the Rialto Defendants argue that Ms. Flournoy cannot state a claim against them under § 1981. In this regard, the Rialto Defendants point to the Management Agreement[2] between CML and Rex Property, which states that

> [CML] desires to engage [Rex Property] as an independent contractor to provide certain management services for [CML] with respect to [the JB White buildling] . . . . [Rex Property] and [CML] shall not be construed as joint venturers, partners or agents of each other pursuant to this Agreement, and neither shall have the power to bind or obligate the other except as set forth herein. In all respects, the status of [Rex Property] to [CML] under this Agreement is that of an independent contractor.

---

[1] The Rialto Defendants' first argument is that Ms. Flournoy does not allege that they had any involvement in the decision not to lease the subject property or that they interfered with Ms. Flournoy's right to make or enforce a contract in any way. (Doc. 11 at 6.) Liability under § 1981, however, may be imputed to an employer through vicarious liability. See Long v. Aronov Realty Mgmt., Inc., 645 F. Supp. 2d 1008, 1033 n.54 (M.D. Ala. 2009). Thus, the Court focuses its attention on the Rialto Defendants' main argument: that they had no agency or employment relationship with Mr. King or Rex Property sufficient to impose vicarious liability.

[2] The Court may, on either a motion to dismiss or a motion for judgment on the pleadings, consider a document attached to the pleadings without converting the motion to one for summary judgment where the attachment is "(1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Because the existence of an independent contractor or agency relationship is informed by the contract language, and Ms. Flournoy's claims against the Rialto Defendants are based entirely on agency, the Court finds the document to be central to her claims. Also, Ms. Flournoy does not dispute the authenticity of the document. Accordingly, the Court finds its consideration on this motion appropriate.

(Doc. 10, Ex. A at 1, 6-7.) In further support, the Rialto Defendants argue that Ms. Flournoy has not pled any facts regarding the level of control or influence exerted by the Rialto Defendants that would create a principal/agent relationship. Indeed, they cite language from the Management Agreement that disclaims any authority or control over Rex Property's employees:

> [Rex Property] will . . . hire, train, supervise, direct the work of, pay, and discharge all personnel necessary for the operation of the Management Functions. Such personnel shall in every instance be employees of [Rex Property] and not of [CML]. [CML] shall have no right to supervise or direct such employees.

(Id. at 4.)

Ms. Flournoy responds that she has alleged all facts of which she is aware at this early stage in litigation regarding the relationship between the parties – namely that Rialto has significant control over CML, CML owns the JB Whites building, Rex Property was the leasing agent, and Mr. King was an agent for Rex Property. (Doc. 14 at 8.) Taking a cue from the Rialto Defendants, Ms. Flournoy also cites language in CML's **Management Agreement** with Rex Property, which states, *inter alia*: (1) certain expenses must be approved by CML (Doc. 10, Ex. A at § 2.3); (2) leases prepared by Rex Property must be signed by CML (Id., Ex. A at 1); (3) CML retains sole discretion regarding

the cash management system for retail units (Id. at § 3.1(a)); and (4) all bank accounts must be maintained in CML's name and Rex Property must deposit all rent payments into those accounts (Id.). Ms. Flournoy contends that "these provisions create opportunities to demonstrate the level of control necessary to rebut an independent contractor presumption[.]" (Doc. 14 at 10.)

In Georgia, the "true test" of whether a particular worker is an employee or independent contractor "is whether the employer, under the contract either oral or written, assumes the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." Johns v. Jarrard, 927 F.2d 551, 556 (11th Cir. 1991) (quoting Brown v. Coastal Emergency Servs., Inc., 354 S.E.2d 632, 634-35 (Ga. Ct. App. 1987)). And "[w]here the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true *unless the evidence shows that the employer assumed such control.*" Id. (quoting Bartlett v. Northside Realty Assocs., Inc., 380 S.E.2d 744, 745 (Ga. Ct. App. 1979)) (alteration in original) (emphasis added).

The Rialto Defendants contend that "it is impossible for [Ms. Flournoy] to establish a reasonable expectation that discovery will reveal evidence" when the Management Agreement

9

clearly states that Rex Property is an independent contractor. (Doc. 18 at 3.) Such an argument misinterprets the law as stated above. There is no doubt that the Rialto Defendants have established a presumption that the relationship is that of an independent contractor, but Ms. Flournoy is afforded the opportunity to rebut that presumption with evidence of control sufficient to transform the relationship.

Ms. Flournoy — even on this limited record — has identified specific provisions within the Management Agreement that could indicate the Rialto Defendants exercised control over Rex Property, which the Court finds sufficient to survive the present motion. On a motion for judgment on the pleadings, the Court is reluctant to dispose of Ms. Flournoy's claims, which turn on such a fact-intensive inquiry. Indeed, the Georgia Court of Appeals reversed a trial court's decision — on summary judgment no less — based on a strikingly similar issue. There, the appeals court held that the trial court committed reversible error by concluding the relationship at issue was that of an independent contractor, even in the face of a contract identifying the purported agent as an independent contractor and disclaiming control over the time, place, and manner of soliciting applications for insurance, because "other provisions of the contract provide for control" with regard to other aspects of the business. A.L. Williams & Assocs., Inc. v. Sun

Life Assurance Co. of Canada, 265 S.E.2d 285, 285-86 (Ga. Ct. App. 1980). See also Franza v. Royal Caribbean Cruises, Ltd., 772 F.3d 1225, 1237-38 (11th Cir. 2014) (holding that the district court erred in dismissing the plaintiff's claim of apparent agency in part because the Court was unwilling to "consider the [defendant's onboard] nurse and doctor to be independent contractors simply because that is what the cruise line calls them.")

## IV. CONCLUSION

While not foreclosing the possibility that discovery might reveal Rex Property and Mr. King to be exactly what the Management Agreement claims, Ms. Flournoy has pled sufficient facts, based on her complaint and the Management Agreement, to defeat the Rialto Defendants' motion. Accordingly, the Rialto Defendants' motion for judgment on the pleadings is **DENIED**. (Doc. 11.)

**ORDER ENTERED** at Augusta, Georgia, this 15th day of May, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA