IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

PATRICIA C. FLOURNOY,          *
                               *
          Plaintiff,           *
                               *
     v.                        *          CV 114-161
                               *
CML-GA WB, LLC; RIALTO         *
CAPITAL ADVISORS, LLC; REX     *
PROPERTY AND LAND, LLC; and    *
PAUL GREGORY KING,             *
                               *
          Defendants.          *

---

**O R D E R**

---

The following motions are now before the Court: (1)
Defendants CML-GA WB, LLC and Rialto Capital Advisors, LLC's
Motion for Summary Judgment (doc. 36); (2) Defendants CML-GA WB,
LLC and Rialto Capital Advisors, LLC's Motion for Oral Argument
(doc. 40); (3) Defendants REX Property and Land, LLC and Paul
Gregory King's Motion for Summary Judgment (doc. 41) and Amended
Motion for Summary Judgment (doc. 46); and (4) Defendants REX
Property and Land, LLC and Paul Gregory King's Motion for Oral
Argument (doc. 44).

## I.  **Background**

This case arises out of Plaintiff Patricia Flournoy's
attempt to lease commercial space in the JB Whites building in

Augusta, Georgia. She claims she was denied an opportunity to lease space in that building because of her race.

## A. The parties

Plaintiff Patricia Flournoy is an African-American woman who owns and operates a hair salon in Augusta, Georgia. Defendant CML-GA WB, LLC ("CML-GA") owns a portion of the JB Whites building in Augusta, and Defendant Rialto Capital Advisors, LLC ("Rialto") manages CML-GA (collectively, "the Rialto Defendants"). (Doc. 41, Ex. 4 ("Kentor Dep.") at 7.) Bradley Kentor, the vice president of commercial real estate at Rialto, is the primary landlord contact at the JB Whites building. (Id. at 6.) REX Property and Land, LLC ("REX") is owned and managed by Paul King, who is the general manager and sales broker at the JB Whites building. (Doc. 41, Ex. 5 ("King Dep.") at 6; Kentor Dep. at 9.)

## B. Defendants' relationship

REX manages the JB Whites building pursuant to a management agreement. (See Doc. 37, Ex. B, Ex. 18 ("Management Agreement").) Under the agreement, REX is responsible for managing, advertising, and marketing the JB Whites building. (King Dep. at 11-15.) REX employees show spaces in the JB Whites building to prospective tenants and begin lease negotiations. (Kentor Dep. at 79.) But Rialto provides all lease forms, and only Rialto can sign a lease agreement. (King

Dep. at 33-35.)   Rialto also handles pricing buildout costs if a space needs building out.   (Kentor Dep. at 22.)

### C.   Plaintiff's negotiations

In 2012, Plaintiff began searching for a new location for her salon and, at some point, discovered the JB Whites building. In August 2012, Plaintiff met with Andrea Carr, a property manager for REX, and toured a commercial space at the JB Whites building.   (Doc. 41, Ex. 1 ("Carr Dep.") at 16.)   Apparently interested in the space, Plaintiff paid a fifty-dollar application fee and agreed to a credit and background check. Not long after Plaintiff toured the property, King spoke with Kentor and informed him about Plaintiff's interest in the space, at which time Kentor told King that he did not want a salon in the building because of concerns about fumes and odors, the high cost of building out the area, the failure rate of salons, and the lack of cross-shopping customers.   (Kentor Dep. at 26-27, 56-57, 107.)

Nevertheless, King and Carr continued discussions with Plaintiff regarding her interest in leasing the space.   King maintains that he continued talks with Plaintiff because he wanted to help her lease the space.   (King Dep. at 53.)   At some point, Plaintiff learned through Carr that she needed to submit a business plan.   According to King, the plan needed to include, among other things, how she would be able to contribute to any necessary buildout expenses in the space.   (Id. at 54-55.)   But

3

Plaintiff claims that no one ever instructed her to address the buildout costs in the plan. (See Doc. 41, Ex. 2 ("Pl. Dep.") at 107.) Regardless, Plaintiff hired Catherine Maness, a business consultant, to draft her business plan. (Id. at 115-16.)

At some point during these negotiations, King visited Plaintiff's salon. (See King Dep. at 72.) And either right after or right before that visit, King asked Plaintiff about her clientele. Specifically, he asked her "if she serviced all types of races, and genders . . . ." (Id.) And sometime after Plaintiff was instructed to create a business plan, Maness called Carr about sending Plaintiff's business plan to REX, and Carr informed Maness that there was an issue with Plaintiff's credit score. (Pl. Dep. at 143-45.) Plaintiff and Maness then visited King's office and attempted to present the business plan, at which time Plaintiff claims that King informed her that she would not be permitted to lease space in the building. (Id. at 148.) Plaintiff maintains that the only reason he gave her was that her credit score was too low. (See id. at 150.) King claims that the low credit score was not the only reason he gave Plaintiff. (See King Dep. at 137.) But REX and King acknowledge that Plaintiff's credit score was part of the decision. King testified that Kentor had recently instructed him to allow only tenants with credit scores of 700 or higher. (Id. at 56-57.) Kentor, however, testified that he has no recollection of that instruction. (Kentor Dep. at 33.)

4

Sometime after Plaintiff's negotiations fell through, REX and King began negotiating with Jennifer Ellis, an interior decorator who wanted to lease space in the building. (See Doc. 54, Exs. 2-4.) Ellis and King apparently traded e-mails that discussed costs, rent, and other details and a draft lease, but Ellis ultimately did not lease any space.

Following King's denial of her application, Plaintiff initiated this action, claiming that King and REX denied her lease because of her race. She also sued CML-GA and Rialto under a theory of vicarious liability. CML-GA and Rialto moved for judgment on the pleadings (doc. 11), which the Court denied (doc. 48). All Defendants now move for summary judgment on Plaintiff's discrimination claim. Additionally, CML-GA and Rialto filed a crossclaim for indemnification against REX and King, and REX and King responded with their own crossclaim for indemnification. All Defendants now move for summary judgment on the crossclaims.

## II.   **Legal Standard**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law.   Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation omitted) (internal quotation marks omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of

6

Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

7

In this action, the Clerk gave Plaintiff appropriate notice of the motions for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 39, 45, 47.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. **Discussion**

All Defendants move for summary judgment on Plaintiff's § 1981 claim. And all Defendants move for summary judgment on the crossclaims. The Court addresses these issues below.

#### A. **Plaintiff's § 1981 claim**

The basic elements of a § 1981 claim are: "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." Kinnon v. Arcoub, Gopman & Assocs., 490 F.3d 886, 891 (11th Cir. 2007) (footnote omitted) (citation omitted) (internal quotation marks omitted). Enumerated activities in the statute include "the making, performance, modification, and termination of contracts, and the enjoyment of

all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. A plaintiff may prove a § 1981 claim either through direct evidence or circumstantial evidence. See Long v. Aronov Realty Mgmt., Inc., 645 F. Supp. 2d 1008, 1017, 1020 (M.D. Ala. 2009). Here, Plaintiff has conceded that she has not presented direct evidence of discrimination. (Pl.'s Br. Opp'n. at 13.) Accordingly, in order to succeed on her § 1981 claim, Plaintiff must present sufficient circumstantial evidence that Defendants discriminated against her during the negotiation process.

In a § 1981 case based on circumstantial evidence, the burden-shifting test derived from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies. Under that test, a plaintiff must first establish a prima facie case of discrimination, which "creates a rebuttable presumption that the [defendant] unlawfully discriminated against her." Brooks v. Cty. Comm'n, 446 F.3d 1160, 1162 (11th Cir. 2006) (citation omitted) (internal quotation marks omitted). If the plaintiff demonstrates a prima facie case, then the burden shifts to the defendant to offer legitimate, non-discriminatory reasons for its actions. Id. If the defendant offers legitimate, non-discriminatory reasons, then the burden shifts back to the plaintiff to rebut those reasons and show that they are merely pretext for discrimination. Id. "Although the intermediate

burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the [defendant] intentionally discriminated against the [plaintiff] remains at all times with the plaintiff." Id. (citation omitted) (internal quotation marks omitted).

In a non-employment § 1981 case, the prima facie case requires a plaintiff to show: "(1) that she is a member of a protected class; (2) that the allegedly discriminatory conduct concerned one or more of the activities enumerated in the statute; . . . and (3) that the defendants treated plaintiff less favorably with regard to the allegedly discriminatory act than the defendants treated other similarly situated persons who were outside plaintiff's protected class." Benton v. Cousins Props., Inc., 230 F. Supp. 2d 1351, 1370 (N.D. Ga. 2002). "[T]he third prong requires plaintiff to show an apt comparator of a different race who was not subjected to the same harsh

treatment with regard to the enforcement of a contract as was the plaintiff."[1]  Id.

Plaintiff has failed to establish a prima facie case.  No one disputes that she is a member of a protected class or that this matter involves an enumerated activity.  But Plaintiff's case fails at this step because she has not presented adequate evidence showing an apt comparator.  Plaintiff argues that Jennifer Ellis is a comparator because she is a small business owner and she was interested in leasing commercial space.  But that argument is unconvincing.  Ellis wanted to lease an entirely different space in the building for an entirely different type of business, i.e., interior design.  These differences are simply too significant for Plaintiff to overcome.

Although the Court is satisfied that Plaintiff has failed to establish a prima facie case, for the sake of completeness, the Court will nevertheless analyze the remainder of the burden-shifting test.  If the Court were to assume that

---

[1] The Court recognizes that there is some uncertainty as to the exact requirements of a prima facie case in a § 1981 case.  See Kinnon, 490 F.3d at 894.  But the cases on topic that the Court has located require some type of comparator evidence.  See Benton, 230 F. Supp. 2d at 1370 (requiring a similarly situated person); Brooks v. Collis Foods, Inc., 365 F. Supp. 2d 1342, 1356 (N.D. Ga. 2005) (finding that, in certain cases, a plaintiff may establish a prima facie case by showing "markedly hostile treatment" instead of an apt comparator).  The Court finds that, because this cases involves a business dispute, instead of a retail transaction, an apt comparator is necessary to establish a prima facie case.  See Benton, 230 F. Supp. 2d at 1378.  The Court also notes that none of the parties has addressed this issue, and they all seem to agree that a prima facie case requires a comparator.  Plaintiff only argues that the burden-shifting test is not required.

Plaintiff established a prima facie case, Defendants would then have to offer legitimate, non-discriminatory reasons for their actions. See Brooks, 446 F.3d at 1162. Defendants have offered a number of reasons, including that Kentor did not want a salon tenant in the building. Specifically, it is undisputed that Kentor found a salon tenant undesirable because the business would emit fumes and odors that may disturb residents, salons tend to have high failure rates, and salons do not generate cross-shopping customers. The Court is satisfied that these reasons are legitimate and non-discriminatory.

Accordingly, Plaintiff must rebut those reasons and produce evidence that shows that they are merely pretext for discrimination. Brooks, 446 F.3d at 1163. To show pretext, Plaintiff's evidence "'must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendants'] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" Long, 645 F. Supp. 2d at 1021 (quoting Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (per curiam)). And it is the Court's job to "draw[] the lines on what evidence is sufficient to create an issue on pretext." Rojas v. Florida, 285 F.3d 1339, 1344 (11th Cir. 2002). It is not the Court's responsibility to second-guess a business decision and it will not do so. See id. That "kind of

12

inquiry—whether a business decision is wise or nice or accurate—is precluded by [Eleventh Circuit precedent]." Id. In fact, a defendant may act "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as it [] is not for a discriminatory reason." Brown v. Am. Honda Motor Co., 939 F.2d 946, 951 (11th Cir. 1991) (alteration in original) (citation omitted) (internal quotation marks omitted).

Plaintiff's attempts to rebut Defendants' reasons fail. First, she argues that Kentor failed to produce evidence supporting his concerns about the failure rate of salons and the lack of cross-shopping customers. And Plaintiff claims "[i]t is undisputed that nearly every one of the interior units, including the unit Plaintiff was interested in, remain vacant . . . . Certainly, a rent-paying tenant, even one who doesn't promote 'cross-shopping', is preferable from a business standpoint than a largely vacant building." (Pl.'s Br. Opp'n at 25.) She also argues that Kentor's concerns about the failure rate of salons lack merit because Plaintiff's business has been established for several years. Additionally, Plaintiff argues that she could have convinced Defendants that these reasons were unfounded had she been able to negotiate longer. All of these arguments lack merit. Plaintiff is simply asking the Court to second-guess a business judgment, which the Court is not permitted to do. See Rojas, 285 F.3d at 1344. Defendants are

13

not required to show that these reasons were sound or that salons actually frequently fail. Instead, Plaintiff must show that these reasons are a mask for discrimination, which Plaintiff has failed to do.

Plaintiff also points to two pieces of evidence to rebut Defendants' decision and show pretext: the discrepancy in the credit-score requirement and King's question about Plaintiff's clientele. Regarding the credit-score requirement, when viewed in the light most favorable to Plaintiff, the evidence establishes that Kentor never instructed King to implement the requirement. It does not, however, establish that King implemented the credit-score requirement for a discriminatory purpose. King's question about Plaintiff's clientele similarly falls short. Isolated comments are often not enough to establish discrimination. Cf. Rojas, 285 F. 3d at 1343 (finding that a supervisor's comment about one female employee was insufficient to support a different female employee's claim of sex discrimination, even though she worked under that supervisor and the comment was discriminatory on its face). These two minor pieces of evidence, without more, simply do not reveal "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in Defendants' legitimate business reasons such that a jury could find them "unworthy of credence." Long, 645 F. Supp. 2d at 1021 (citation omitted). Because Plaintiff has

14

failed to present evidence from which a reasonable jury could infer intentional discrimination, her claim fails as a matter of law and Defendants' motions on this issue are **GRANTED**.[2] Additionally, because the Court finds that Plaintiff's § 1981 claim fails, the Court finds it unnecessary to separately address the Rialto Defendants' vicarious liability.

### B. Defendants' crossclaims

Following Plaintiff's complaint, the Rialto Defendants filed a crossclaim for indemnification against REX and King. (Doc. 26.) REX and King answered and included their own crossclaim for indemnification against the Rialto Defendants. (Doc. 29.) They all now move for summary judgment on the indemnification issues.

The parties' indemnification claims arise from the management agreement between REX and the Rialto Defendants. The Rialto Defendants' crossclaim against REX and King is based on paragraph 7.2(a) of the management agreement, which provides, in part:

> Manager shall, and Manager does, hereby agree to indemnify Owner and its affiliates, parent, officers, members and managers . . . against, and hold harmless, save and defend the Owner Indemnified Parties from any

---

[2] Recognizing the lack of comparator evidence, Plaintiff also argues that there is a "convincing mosaic" of circumstantial evidence to support discrimination in this case. See Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). But because the Court has already determined that Plaintiff has not presented sufficient evidence of intentional discrimination, the Court finds it unnecessary to separately address the convincing mosaic analysis.

and all claims, demands, actions, causes of action, suits, liabilities, damages, losses, cost and expenses arising from bodily injury, property damage or other claims . . . which any of the Owner Indemnified Parties may suffer or incur, or which may be asserted against the Owner Indemnified Parties, whether meritorious or not, if and to the extent the same are caused by the negligence or willful misconduct of Manager or its agents or employees . . . .

(Management Agreement ¶ 7.2(a).) The Rialto Defendants' crossclaim alleges that REX and King are required to indemnify the Rialto Defendants for Plaintiff's underlying claim. But because Plaintiff's claim fails as a matter of law, the Rialto Defendants' crossclaim cannot survive. First, the crossclaim alleges that REX is liable if "[the Rialto Defendants are] adjudged liable to [Plaintiff] for any amounts that [Plaintiff] seeks in this litigation, then [REX] is liable to [the Rialto Defendants] for all such amounts." (Doc. 26. ¶ 12.) So the Rialto Defendants have requested indemnification only to the extent they are held liable, and they are not liable in this case.

Even if the Court construes the crossclaim more liberally, it still fails. Paragraph 7.2(a) of the management agreement plainly states that REX must indemnify the Rialto Defendants for claims against the Rialto Defendants that are based on REX's misconduct. And this provision applies even if the claims lack merit. But, for the provision to apply, the claims against REX must be meritorious. The agreement states that REX will

16

indemnify the Rialto Defendants for claims and liabilities "which may be asserted against [the Rialto Defendants], whether meritorious or not, if and to the extent the same are caused by the negligence or willful misconduct of [REX] or its agents . . . ." (Management Agreement ¶ 7(a).) So the "meritorious or not" language applies only to claims brought against the Rialto Defendants, not claims against REX. And the Rialto Defendants appear to acknowledge this logic because they do not argue otherwise. Accordingly, the plain meaning of the contract supports summary judgment on this issue. See Begner v. United States, 428 F.3d 998, 1005 (11th Cir. 2005) (stating that when a court interprets an unambiguous contract, the court enforces the contract according to its terms).

The Rialto Defendants also argue that the crossclaim should survive because King acted negligently by continuing negotiations with Plaintiff after Kentor indicated that he did not want a salon. The Court is not persuaded. The Rialto Defendants' crossclaim is based entirely on indemnification for Plaintiff's discrimination claim. This negligence claim appears only in the Rialto Defendants' brief, and it implies that King and REX breached some duty owed to the Rialto Defendants, which is separate and distinct from the indemnification claim. But the crossclaim does not allege this cause of action or facts supporting it. Accordingly, it fails to state a claim for

17

negligence or any other breach of a duty owed to the Rialto Defendants by REX or King. See Fed. R. Civ. P. 8(a). For the reasons discussed above, REX and King's motion for summary judgment on the Rialto Defendants' crossclaim is **GRANTED**.

REX and King's crossclaim against the Rialto Defendants is based on paragraph 7.2(b) of the management agreement, which provides, in part:

> Indemnity by Owner. Owner shall, and Owner does, hereby agree to indemnify Manager and its affiliates, parent, officers, members and managers from and against, and hold harmless, save and defend Manager and its affiliates, parent, officers, members and managers from any and all claims, demands, actions, causes of action, suits, liabilities, damages, losses, costs and expenses arising from bodily injury, property damage or other claims . . . which Manager or its affiliates, parent, officers, members and managers may suffer or incur, or which may be asserted against Manager or its affiliates, parent, officers, members and managers, whether meritorious or not, if and to the extent the same are caused by the negligence or willful misconduct of Owner, and which arise in connection with the Project or the performance by Manager of any of its duties and obligations under this Agreement[;] . . . provided, however, that in no event shall the indemnity provided under this Section extend to any claim . . . caused by the negligence or willful misconduct of Manager or its agents or employees . . . .

(Management Agreement ¶ 7.2(b).) The Rialto Defendants now move for summary judgment on this issue and argue that there is no evidence of misconduct or negligence by the Rialto Defendants. And REX and King have not presented any evidence showing that

the Rialto Defendants acted wrongfully or negligently. In fact, Plaintiff expressly stated that she based her claims against the Rialto Defendants on vicarious liability. Accordingly, summary judgment on this issue is **GRANTED**.

## IV.    Conclusion

For the reasons set forth above, Defendants CML-GA WB, LLC and Rialto Capital Advisors, LLC's Motion for Summary Judgment (doc. 36) is **GRANTED**. Defendants REX Property and Land, LLC and Paul Gregory King's Motion for Summary Judgment (doc. 41) and Amended Motion for Summary Judgment (doc. 46) are **GRANTED**. Additionally, because the Court has resolved this matter on the briefs, Defendants' motions for oral argument (docs. 40, 44) are **DENIED AS MOOT**. The Clerk shall **CLOSE** this case and **ENTER JUDGMENT** in favor of Defendants against Plaintiff. The Clerk is further directed to **ENTER JUDGMENT** in favor of CML-GA and Rialto against REX and King regarding REX and King's crossclaim and in favor of REX and King against CML-GA and Rialto regarding CML-GA and Rialto's crossclaim.

**ORDER ENTERED** at Augusta, Georgia this _10th_ day of December, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA